UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Eugene Ladd,                    :
          Plaintiff,           :
                               :
          v.                   :    File No. 1:08-CV-255
                               :
Deborah Thibault, Paul         :
Heath, Richard Plank,          :
Jay Simons, Susan Blair,       :
Greg Hale, Kristin Prior,      :
Jacqueline Kotkin,             :
Raymond Flum, Dominic          :
Domato, and Michael            :
O'Malley,                      :
          Defendants.          :


MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 27 and 28)

     Plaintiff Eugene Ladd, a Vermont inmate proceeding *pro
se*, brings this action claiming that his prison furlough was
revoked in violation of his due process rights under the
Fourteenth Amendment.  Pending before the Court are Ladd's
motion for summary judgment and the defendants' motion to
dismiss.  For the reasons set forth below, I recommend that
the motion to dismiss be GRANTED, the motion for summary
judgment be DENIED, and this case be DISMISSED.

Factual Background

     In his complaint, Ladd alleges that he was released on
conditional re-entry ("CR"), formerly known as furlough, on

April 4, 2005.  He was returned to prison on April 6, 2005

for violating a condition of his release.  Specifically,

Ladd was accused of engaging in "threatening, violent or

assaultive behavior."  In a separate federal case, Ladd

submitted a state court decision that described the offense

in question:

> The underlying cause of the re-entry revocation
> was a threatening phone call.  On April 6, 2005,
> Peterson Benjamin, another offender on conditional
> re-entry, left DOC caseworker Matt Nault a voice-
> mail message stating that he was coming to Mr.
> Nault's home to kill him.  A DOC officer
> questioned Mr. Benjamin about the call the next
> day.  Mr. Benjamin stated that [Ladd] told him to
> make the call.  Mr. Benjamin also stated that
> [Ladd] asked for a guitar string and a gun to kill
> Mr. Nault.

Ladd v. Hofmann, File No. 1:07-CV-176 (Paper 9-12 at 43).

On April 7, 2005, Ladd was served with a Notice of

Suspension setting forth the charge against him.  A

revocation hearing was held on April 12, 2005.  Ladd claims

that prior to the hearing, he was not informed of the

specific reasons for his CR revocation and that, as a

result, he was unable to call witnesses or present a

meaningful defense.

Ladd alleges in this complaint that the only evidence

presented at the hearing was the correctional officer's

conclusory report stating that Ladd had violated the terms of his CR, "without any substantiating facts as to how plaintiff had violated this rule." (Paper 37 at 5). The complaint also makes reference to a confidential incident report. Ladd was ultimately found guilty of the violation, and a hearing report was submitted to the prison Superintendent for his review and signature.

After reviewing the hearing report, prison Superintendent Jay Simons informed Ladd that he was going to order another hearing based upon, in Ladd's words, "the errors." Id. at 6. When a new hearing was not immediately rescheduled, Ladd filed a habeas corpus petition in Chittenden County Superior Court. He was subsequently provided notice of a re-hearing to be held on August 25, 2005.

Ladd claims that prior to the re-hearing, he was again denied notice of the "the circumstances of the alleged conduct which provided the foundation of the violation of the condition, or any explanation of the conduct I allegedly performed that would have violated this condition." Id. at 9-10. In preparation for the hearing, he tried to speak with one of his potential witnesses by telephone, but was

unable to reach her.  He therefore requested, and was granted, a continuance to August 31, 2005.

The re-hearing was held on August 31st as scheduled. The room in which it was held had no telephone, thus allegedly preventing Ladd from calling "any relevant witness[es]."  Id. at 9.  The hearing officer did make an attempt, using a phone in another room, to reach a witness identified by Ladd, but was unsuccessful.

Various documents were presented as evidence by both sides.  The prosecution introduced an electronic case note from Ladd's case worker and incident reports from two correctional officers.  Despite Ladd's claim that he had no notice of the specific conduct underlying the charge, he submitted a written statement of relevant events, a written statement from Peterson Benjamin, a Burlington Police Department fax sheet with an attached incident report, and a "[P]etition to pursue or withdraw complaint for Relief from Abuse order."  Id. at 10.

Benjamin testified at the hearing, but Ladd was not allowed to be present during the testimony.  When Ladd objected to being excluded, the hearing officer allegedly overruled the objection without explanation.  Ladd was

permitted to listen to Benjmain's testimony after-the-fact, presumably in the form of a recording.

At the conclusion of the hearing, the hearing officer found that Ladd was guilty of violating a condition of his CR. According to the complaint, the hearing officer made four findings based upon the evidence: (1) that Ladd had contact with Benjamin and that, as a result, Benjamin felt threatened and scared; (2) that Benjamin's testimony was credible; (3) that Ladd's written statement was false; and (4) that the proposed testimony from one of Ladd's witnesses was unclear. Id. at 12.

Ladd contends that the evidence did not support the hearing officer's findings. He argues in this complaint that the questions put to Benjamin were leading, and that Benjamin's testimony was uncorroborated. He also contends that "it is a regular pattern of practice that inmates are never believed in any situation by the state unless they are testifying on behalf of the state, at which point their credibility is miraculously restored." Id. The hearing officer's decision was reviewed and affirmed by the Central Case Staffing team.

Ladd also claims that the procedures used in both

hearings violated his due process rights. Specifically, he asserts lack of proper notice, denial of the opportunity to cross-examine a witness, and denial of the ability to telephone potential witnesses. For relief, he seeks a declaratory judgment, injunctive relief that includes placing him back on CR status, and compensatory and punitive damages.

Pending before the Court is Ladd's motion for summary judgment on the due process issue. The defendants have responded with a motion to dismiss, arguing that Ladd's claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994), *res judicata*, and claim preclusion. The defendants also claim sovereign immunity, qualified immunity, and protection from damages claims under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) insofar as Ladd does not allege any physical injuries. The Court will first address the defendants' arguments for dismissal.

Discussion

I.  Motion To Dismiss Standard

The defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). As such, their motions test the legal rather than the factual sufficiency of Ladd's complaint.

See, e.g., Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000)
("At the Rule 12(b)(6) stage, '[t]he issue is not whether a
plaintiff is likely to prevail ultimately, but whether the
claimant is entitled to offer evidence to support the
claims.'") (quoting Chance v. Armstrong, 143 F.3d 698, 701
(2d Cir. 1998)).  Accordingly, the Court must accept the
factual allegations in the complaint as true, Erickson v.
Pardus, 127 S. Ct. 2197, 2200 (2007), and draw all
reasonable inferences in favor of the plaintiff.  Bolt
Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir.
1995).  However, "the tenet that a court must accept as true
all of the allegations contained in a complaint is
inapplicable to legal conclusions."  Ashcroft v. Iqbal, 129
S. Ct. 1937, 1949 (2009).

The Supreme Court has held that the standard governing
a complaint's legal sufficiency is one of "plausibility."
Bell Atlantic Corp. Twombly, 550 U.S. 544, 556-60 (2007).
"A claim has facial plausibility when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged."  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550
U.S. at 556).  This standard does not require a probability

of liability, but "asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

In deciding a motion to dismiss, the Court may consider documents attached to the complaint or incorporated in it by reference, matters of which judicial notice may be taken, or documents that the plaintiff relied upon in bringing suit and either are in his possession or of which he had knowledge.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2000).  Pleadings drafted by a *pro se* party must be liberally construed.  Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006).

## II.  Heck v. Humphrey

The defendants first argue that Ladd's challenge to the CR revocation decision is barred by the Supreme Court's holding in Heck v. Humphrey, 512 U.S. 477 (1994).  Heck stands for the proposition that a § 1983 action is not cognizable where success for the plaintiff "necessarily demonstrates the invalidity of the conviction."  512 U.S. at 481-82.  In so holding, the Supreme Court noted that civil actions are "not appropriate vehicles for challenging the validity of outstanding criminal judgments."  Id. at 486.

Heck has been applied not only to initial criminal

judgments, but also to prison administrative determinations that effect the fact or length of the plaintiff's confinement. See Edwards v. Balisok, 520 U.S. 641, 644 (1997) (extending Heck to decision involving revocation of good-time credits). The Heck rule does not apply when the administrative proceeding pertains only to conditions of confinement, since a change in conditions has no impact on the fact or length of the plaintiff's incarceration. See Jenkins v. Haubert, 179 F.3d 19, 27 (2d Cir. 1999) ("the [Supreme] Court has never announced that the Heck rule bars a prisoner's challenge under § 1983 to an administrative or disciplinary sanction that does not affect the overall length of his confinement"); cf. Preiser v. Rodriguez, 411 U.S. 475, 499 (1973) ("a § 1983 action is a proper remedy for a state prisoner who his making a constitutional challenge to the conditions of his prison life, but not the fact or length of his custody").

The defendants argue that because Ladd is asking the Court to place him back in the community on CR status, the complaint is barred under Heck. In making this argument, the defendant appear to assume that release on CR status impacts the length of Ladd's sentence, and that his

complaint is thus barred until he can show that the revocation has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus." Heck, 512 U.S. at 487. A review of Vermont case law, however, calls this assumption into serious doubt.

To begin, it is clear that the Heck "favorable termination" rule has been regularly applied in § 1983 actions challenging confinement based upon parole revocation decisions. See, e.g., Hannah v. Davis, 2008 WL 516750, at *2 (W.D.N.Y. Feb. 25, 2008) (collecting parole revocation cases); Davis v. Cotov, 214 F. Supp. 2d 310, 316 (E.D.N.Y. 2002). The Vermont Supreme Court, however, has held that a prisoner on furlough status "more closely resembles . . . an incarcerated person" than a parolee. Conway v. Cumming, 161 Vt. 113, 116 (1993).

> We hold that plaintiff's status under furlough
> more closely resembles that of an inmate seeking a
> particular right or status within an institution,
> rather than that of a parolee. Supervision of
> plaintiff by the Commissioner both under law and
> in practice was not diminished by his furlough
> status. He not only remained incarcerated, but
> his enrollment in [a treatment program] imposed a
> number of behavioral mandates and restrictions
> that would not have applied to him as an inmate

under the usual rules and restrictions governing
inmates generally.  Significantly, the law makes a
clear distinction between the consequences of
absconding while on furlough, which would
constitute the crime of escape and could lead to
an added prison term, and the violation of parole,
for which an offender risks return to the custody
of the Commissioner for the unexpired term of the
original sentence.

Id.[1]

To the extent that parole and furlough might be

perceived as elements of an inmate's punishment, the Vermont

Supreme Court again distinguishes between the two.  In the

context of an Ex Post Facto Clause analysis, the court

announced that a change in the furlough law

relates to prison administration and regulation,
and not an element of punishment, and is,
therefore, beyond the purview of the Ex Post Facto
Clause.  See, e.g., Brown v. Day, No. 96-35027,
1997 WL 334970, at *2 (9th Cir. June 11, 1997)
(holding change in eligibility for furlough does
not violate Ex Post Facto Clause, noting that
there was no allegation that "eligibility for the
furlough program would have any impact on the
length of his sentence"); Lee v. Governor of N.Y.,
87 F.3d 55, 59 (2d Cir. 1996) (holding that
legislation rendering certain prisoners ineligible
for temporary release was "not . . . an increase
in punishment," especially where "there is no
allegation that plaintiffs' eligibility for or

    [1]  The conditional re-entry program is codified at 28 V.S.A. § 721 *et
seq.*  "Conditional re-entry" is defined as "the process by which a sentenced
offender is released into a community for supervision while participating in
programs that assist the reintegration process."  28 V.S.A. § 722(1).  Release
is pursuant to Vermont's furlough statute, 28 V.S.A. § 808.  28 V.S.A. §
723(b).  Each day an offender is supervised in CR "shall be counted as one day
served for the total effective sentence."  Id. at § 726.  An inmate may be
recommended for parole after satisfactory participation in CR.  Id. at § 725.

> participation in a temporary release program would
> have any effect on the length of their
> sentences"); <u>Milhouse v. Levi</u>, 548 F.2d 357, 364
> (D.C. Cir. 1976) (holding that the attorney
> general's order that curtailed furlough privileges
> was not an ex post facto law because "[a] furlough
> program, unlike parole, . . . is an internal
> rehabilitational program the denial of which
> cannot be said to be an element of the punishment
> attached to an inmate's initial conviction");
> <u>Spuck v. Desuta</u>, No. Civ.A. 05-85J, 2006 WL
> 1428249, at *2 (W.D. Pa. May 22, 2006) (holding
> that the "Ex Post Facto Clause cannot be violated
> by denial of furlough"); <u>DiStefano v. Watson</u>, 566
> A.2d 1, 6 (Del. 1989) (upholding amendment
> rendering prisoners generally ineligible for any
> furlough or work release program during the first
> ten years of their confinement, noting that it
> "regulates the Department of Correction's internal
> affairs, and is not a law annexed to the crime").
> <u>But</u> <u>see</u> <u>Plyler v. Moore</u>, 129 F.3d 728, 735 (4th
> Cir. 1997) (holding that Ex Post Facto Clause was
> violated where the furlough eliminated was
> "indistinguishable from parole").

<u>Girouard v. Hofmann</u>, 2009 WL 2400967, at ¶ 9 (Vt. June 19, 2009). This statement and the supporting citations indicate that furlough is a temporary release program administered by the Department of Corrections, and is not an element of the prisoner's overall sentence. As one court explained, a temporary release program "merely changes the location where the sentence is to be served." <u>Oberly v. Kearney</u>, 2000 WL 1876439, at *2 (D. Del. Dec. 15, 2000).

Accepting the State Supreme Court's interpretation of Vermont's conditional re-entry program, furlough is not

equivalent to parole, and a revocation of furlough does not impact the length of an inmate's sentence.[2]  Instead, the program now known as conditional re-entry is a prison rehabilitation program, the awarding or revocation of which has no impact on the inmate's status as an incarcerated person.  As with other temporary release programs administered by prisons, the Vermont CR program is a condition of confinement, and the Heck rule does not apply.  See, e.g., Kim v. Hurston, 182 F.3d 113, 118 n.3 (2d Cir. 1999) (noting that Heck did not apply to § 1983 claim regarding removal from temporary release program because "prisoner is not challenging the overall length of confinement");  Pena v. Recore, 1999 WL 966107, at *3 (E.D.N.Y. Oct. 21, 1999) (holding that Heck does not apply to inmate's removal from work release because "revocation of temporary work release is a sanction that affects the conditions of a sentence, not its overall length").  The Court should therefore decline to dismiss Ladd's complaint on the basis of Heck.

III.  *Res Judicata*

_____

[2]  The Second Circuit has held that a Vermont inmate's furlough may, in some cases, be similar enough to the conditions of parole to entitle the inmate to certain due process rights.  Holcomb v. Lykens, 337 F.3d 217, 222 (2d Cir. 2003).  Nothing in the Holcomb decision suggests that a revocation of furlough impacts the fact or length of the inmate's confinement.

The defendants also argue that Ladd's claims are barred by *res judicata*. They cite three prior pieces of state court litigation in which Ladd has raised, or could have raised, due process claims arising out of the incident with Peterson Benjamin. Two of those actions were state habeas petitions regarding his CR revocation. The third was a state civil action pertaining to a Disciplinary Rule violation for which Ladd was sentenced to three days of segregated confinement.

In a federal § 1983 suit, the same preclusive effect is given to a previous state court proceeding as would be given to that proceeding in the courts of the State in which the judgment was rendered. <u>See</u> 28 U.S.C § 1738; <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>, 465 U.S. 75, 82-83 (1984); <u>Kremer v. Chemical Constr. Corp.</u>, 456 U.S. 461, 476 (1982). The Court must therefore decide what preclusive effect the Vermont courts would give to Ladd's prior state court proceedings.

Under Vermont law, *res judicata* (also known as "claim preclusion") requires (1) a previous final judgment on the merits, (2) in a case that was between the same parties or parties in privity, and (3) the claim has been or could have

been fully litigated in the prior proceeding.  <u>In re St.</u>
<u>Mary's Church Cell Tower</u>, 180 Vt. 638, 638 (2006); <u>see</u> <u>also</u>
<u>In re Cent. Vermont Pub. Serv. Corp.</u>, 172 Vt. 14, 39 (2001).
The defendants argue that Ladd's litigation pertaining to
his disciplinary hearing is the best fit under these
principles.  The defendants have not provided the Court with
any documentation from that proceeding.  Consequently, the
Court has only a general sense of what facts were at issue,
what claims were made, and of whether Ladd could have raised
his current claims in that litigation.

Moreover, Ladd's state court civil action involved an
entirely different hearing.  Nothing in the record indicates
that the procedures, evidence, or rulings in the CR
revocation hearings – upon which Ladd bases his current
objections – were the same as those in the disciplinary
proceeding.  It is true, as the defendants point out, that
the two hearings arose out of the same threatening phone
call.  Nonetheless, the pivotal "'transaction or
occurrence'" for due process purposes was the hearing
itself.  (Paper 28 at 8) (citing <u>L-TEC Electronics Corp. v.</u>
<u>Cougar Electronics</u>, 198 F.3d 85, 88 (2d Cir. 1999)).
Accordingly, the Court should find that Ladd's litigation

with regard to his disciplinary hearing does not bar his current claims under principles of *res judicata*.

The defendants next contend that Ladd's state court habeas corpus proceedings bar him from re-litigating his due process claims. The habeas corpus proceedings pertained directly to Ladd's CR revocation hearings. This Court's records indicate that Ladd brought a series of procedural and substantive claims in those proceedings, including challenges to the credibility of Benjamin's testimony, to his own inability to call witnesses, and to the sufficiency of the evidence. Ladd v. Hofmann, File No. 1:07-CV-176 (Paper 9-12 at 40). The state court "carefully considered" these issues, and granted summary judgment in favor of the State on the merits. In re Ladd, 2007 WL 5313314, at *1 (Vt. June Term 2007).

Although not briefed by the defendants, one question this argument raises is whether a state court habeas corpus proceeding can bar a subsequent § 1983 proceeding for damages.[3] There can be little doubt that the state court habeas proceeding was a judgment on the merits, and that the

---

[3] While the defendants do not raise this issue directly, they do note in their brief that in the state court context, there would have been "no legal impediment that prevented Mr. Ladd from seeking monetary damages in his state § 1983 action for the CR revocation when he had already challenged the revocation through a petition for a writ of habeas corpus." (Paper 28 at 9).

same parties or parties in privity were involved.  <u>See</u>,

<u>e.g.</u>, <u>Vega v. Lantz</u>, 2006 WL 2788374, at *5 (D. Conn. Sept.

26, 2006) (finding privity among employees of Department of

Correction) (citing <u>Sunshine v. Anthracite Coal Co. v</u>

<u>Adkins</u>, 310 U.S. 381, 402-03 (1940); <u>Cullen v. Paine Webber</u>

<u>Group, Inc.</u>, 689 F. Supp. 269, 278 (S.D.N.Y. 1988)).

However, there is a well-recognized exception to *res*

*judicata* when the court in the first action had limited

jurisdiction with respect to the available remedies.  <u>See</u>

<u>Nestor v. Pratt & Whitney</u>, 466 F.3d 65, 73 (2d Cir. 2006).

As explained in § 26(1)(c) of the Restatement (Second) of

Judgments, the exception applies where

> [t]he plaintiff was unable to rely on a certain
> theory of the case or to seek a certain remedy or
> form of relief in the first action because of the
> limitations on the subject matter jurisdiction of
> the courts or restrictions on their authority to
> entertain multiple theories or demands for
> multiple remedies or forms of relief in a single
> action, and the plaintiff desires in the second
> action to rely on that theory or to seek that
> remedy or form of relief . . . .

Restatement (Second) of Judgments § 26(1)(c) (1982); <u>see</u>

<u>also</u> <u>Marrese v. American Academy of Orthopaedic Surgeons</u>,

470 U.S. 373, 382 (1985) ("With respect to matters that were

not decided in the state proceedings . . . claim preclusion

generally does not apply where 'the plaintiff was unable to

. . . seek a remedy because of the limitations on the subject matter jurisdiction of the courts.'") (quoting Restatement (Second) of Judgments § 26(1)(c) (1982)).

In cases arising out of other states within the Second Circuit, this *res judicata* exception has been applied to § 1983 actions for damages that would otherwise be barred by a previous state court habeas proceeding. <u>See</u> <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790-92 (2d Cir. 1994) (citing New York law); <u>Faraday v. Blanchette</u>, 596 F. Supp. 2d 508, 514-15 (D. Conn. 2009) (citing Connecticut law). The exception should apply in Vermont as well. A review of Vermont's habeas corpus and post-conviction relief statutes reveals that petitions under these statutes do not permit the recovery of damages. <u>See</u> 12 V.S.A. § 3952; 13 V.S.A. § 7131. Furthermore, though not applied in this precise context, the Vermont Supreme Court has adhered to the general principle set forth in § 26 of the Restatement. <u>See</u> <u>State v. Carroll</u>, 171 Vt. 395, 398-99 (2000) (citing Restatement (Second) of Judgments § 26). Accordingly, the Court should apply the exception, and should not bar Ladd's claims for damages on

the basis of *res judicata*.[4]

While Ladd's claims for damages may not be barred by *res judicata*, his claims for declaratory and injunctive relief are not so protected. These forms of relief are essentially the same as those he was seeking in his habeas corpus petitions: a declaration that the defendants acted unlawfully, and vacatur of the revocation decision such that he can be returned to the CR program. All of Ladd's current substantive claims could have been brought in his state habeas petition, and he should not be permitted a second opportunity to pursue the same relief denied him by the state courts.[5]

Dividing the impact of *res judicata* according to the form of relief being sought has support in this Circuit's case law. In <u>Fay v. South Colonie Cent. School Dist.</u>, 802 F.2d 21, 29-30 (2d Cir. 1986), <u>overruled on other grounds by Taylor v. Vermont Dep't of Educ.</u>, 313 F.3d 768, 783 (2d Cir. 2002), the Second Circuit considered the *res judicata* effect

---

[4] Because the defendants do not argue that Ladd's damages claims are barred by collateral estoppel (also known as "issue preclusion"), the Court will not address that question.

[5] Application of *res judicata* in this context is to be distinguished from the preclusive effect of a state court habeas proceeding on a federal habeas petition. Indeed, the federal habeas process requires exhaustion of state court remedies prior to coming to federal court. 28 U.S.C. § 2254(b)(1)(A).

of a previous judgment in which injunctive relief was available, but damages were not. Having concluded that a damages claim was, in fact, unavailable in the prior proceeding, the court concluded that "[a]lthough [plaintiff] could have litigated his claims for injunctive relief in the [prior] proceeding and is therefore barred from doing so now, he is not barred from pursuing his claims for damages." Fay, 802 F.2d at 30.

In sum, while Ladd's claims for damages are not precluded by his prior state habeas petition, his requests for declaratory and injunctive relief are barred. The Court should therefore dismiss these latter claims and continue to the defendants' remaining arguments with respect to Ladd's claims for damages.

IV. Eleventh Amendment

The defendants submit that any damages claims brought against them in their official capacities are barred by the Eleventh Amendment. The Eleventh Amendment prohibits suits brought in federal court by citizens against a state and its agencies, absent a waiver of immunity and consent to suit by the state or a valid abrogation of constitutional immunity by Congress. See, e.g., Puerto Rico Aqueduct & Sewer Auth.

20

v. Metcalf & Eddy, Inc., 506 U.S. 139, 142-47 (1993);
Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89,
97-100 (1984).  The Eleventh Amendment also bars claims for
damages brought against state employees sued in their
official capacities.  See Hafer v. Melo, 502 U.S. 21, 25
(1991); Pennhurst, 465 U.S. at 102.

Relevant to this case, there has been no waiver of
Vermont's sovereign immunity and no abrogation of that
immunity by Congress.  In fact, the Vermont legislature has
specifically preserved the State's immunity under the
Eleventh Amendment.  See 12 V.S.A. § 5601(g).  In the § 1983
context, courts have held that a state is not a "person"
under the statute.  Will v. Michigan Dep't of State Police,
491 U.S. 58, 71 (1989).

Each of the defendants in this case is alleged to have
been an employee of the Vermont Department of Corrections
during the period of time in question.  Accordingly, the
damages claims brought against them in their official
capacities should be DISMISSED under the Eleventh Amendment.

V.   Qualified Immunity

The defendants further argue that they are protected
from damages claims in their individual capacities by virtue

of qualified immunity.  Specifically, they contend that Ladd's liberty interest in furlough has not been clearly established, and that qualified immunity thus shields them from damages for any due process claims arising out of Ladd's revocation hearings.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In assessing an official's eligibility for such immunity, "the appropriate question is the objective inquiry whether a reasonable officer could have believed that [his or her actions were] lawful, in light of clearly established law and the information the officer[ ] possessed."  Wilson v. Layne, 526 U.S. 603, 615 (1999).  Qualified immunity is also said to protect the government officer "if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act."  Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (citing Anderson v. Creighton, 483 U.S. 635, 641 (1987)); see also Martinez v.

Simonetti, 202 F.3d 625, 633-34 (2d Cir. 2000).

Until recently, courts were required to follow the analytical protocol set forth in Saucier v. Katz, 533 U.S. 194, 201 (2001) as follows:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the inquiry, do the facts alleged show the officers' conduct violated a constitutional right. This must be the initial inquiry.
>
> . . . .
>
> [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

However, in Pearson v. Callahan, 129 S. Ct. 808, 818-20 (2009), the Supreme Court revised its approach to qualified immunity, holding that in some situations the Saucier two-step analysis is inappropriate. Those situations include cases in which "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." Pearson, 129 S. Ct. at 818.

Such is the case here. As the defendants properly note, and as discussed below, the law is at least "unsettled with respect to whether a Vermont offender possesses a liberty interest in maintaining CR status." (Paper 28 at

18).  The Court should therefore exercise its discretion and evaluate the "clearly established" prong first.  <u>Dean v. Blumenthal</u>, 2009 WL 2432685, at *5 (2d Cir. Aug. 11, 2009).

When determining whether a right is clearly established, a Court must consider whether  "(1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) 'a reasonable defendant [would] have understood from the existing law that his conduct was unlawful.'"  <u>Anderson v. Recore</u>, 317 F.3d 194, 197 (2d Cir. 2003) (quoting <u>Young v. County of Fulton</u>, 160 F.3d 899, 903 (2d Cir. 1998)(alterations in original)).  "Ultimately, '[t]he question is not what a lawyer would learn or intuit from researching case law, but what a reasonable person in the defendant's position should know about the constitutionality of the conduct.'"  <u>Velez v. Levy</u>, 401 F.3d 75, 100 (2d Cir. 2005) (quoting <u>McCullough v. Wyandanch Union Free Sch.</u>, 187 F.3d 272, 278 (2d Cir. 1999)).

Ladd claims that the hearings revoking his furlough violated his due process rights.  In order for Ladd to maintain his due process claim, he must demonstrate the deprivation of a liberty interest.  <u>See</u> <u>Giano v. Selsky</u>, 238

F.3d 223, 225 (2d Cir. 2001). No federal appellate court
has resolved the question of whether Vermont furlough or CR
programs create a protected liberty interest. See, e.g.,
Holcomb v. Lykens, 337 F.3d 21, 223-24 (2d Cir. 2003)
(discussing what facts would need to be determined to make
such a ruling). This Court has held that an inmate who is
incarcerated and is seeking release on furlough does not
have a liberty interest, but has left open the question of
whether such in interest is present for a furloughee facing
revocation. Elliott v. Vermont Dep't of Corr., 2008 WL
5104203, at *3 n.1 (D. Vt. Nov. 6, 2008).

As discussed above, the Vermont Supreme Court ruled in
Conway that a furloughed inmate has no liberty interest in
his furlough status "under the United States Constitution."
161 Vt. at 117. The Conway decision also held that the
Constitution "would not recognize such [a] right under
existing Vermont law as a state-created liberty interest."
Id. at 118. Consequently, the Court concluded that
termination of an inmate's furlough status without a hearing
does not violate his due process rights. Id.

The holding in Conway was called into question in by
the Second Circuit in Holcomb. 337 F.3d at 222 n.5.

Briefly stated, <u>Holcomb</u> found that, in some situations,
Vermont's furlough programs might entitle a prisoner to due
process protections.  <u>Holcomb</u> involved a prisoner who had
been placed on "extended furlough," was re-incarcerated for
failing to conform with the conditions of his release, and
brought a due process challenge to his revocation hearing.
Citing <u>Young v. Harper</u>, 520 U.S. 143, 145 (1997), the court
noted that some forms of conditional release were similar
enough to parole "with respect to the extent and conditions
of the liberty conferred to him as a furloughee to be
treated as though it were parole for Fourteenth Amendment
purposes."  <u>Holcomb</u>, 337 F.3d at 222.  The court
specifically distinguished <u>Conway</u>, noting that "<u>Conway</u> did
not consider *extended* furlough – the type of conditional
release at issue here – and did not have the benefit of
<u>Young</u> . . . ."  <u>Id.</u> at n.5.[6]

With respect to the liberty interest question, the
<u>Holcomb</u> court focused in large part upon whether, under
Vermont law and the Department of Corrections' directives
and regulations, renewal of a furlough period could be

_____

[6]  At the district court level, this Court had applied qualified
immunity to Holcomb's claims.  The Second Circuit declined to follow that
approach, stating only that it was "not entirely persuaded that [qualified
immunity] was justified in the present case."  <u>Id.</u> at 223.

denied without a hearing.  <u>Id.</u> at 223.

> If extended furlough must be renewed every fifteen
> days absent a finding of improper behavior, there
> is a good argument to be made that the furloughee
> has a reasonable expectation that he or she will
> maintain his or her status so long as he or she
> behaves properly.  If, on the other hand, DOC may
> decline to renew extended furlough at its
> discretion, the argument that the furloughee has
> such an expectation is severely, perhaps fatally,
> weakened.

The court then assumed a liberty interest, and found that
the process accorded to Holcomb was constitutionally
adequate.  <u>Id.</u> at 224-25.

It is certainly arguable that Ladd had a liberty
interest in his CR status.  His release on CR appears to
have resembled the pre-parole program in <u>Young</u> to the extent
that he was permitted to travel beyond the prison gates and
interact with people within the community.  Furthermore,
Department of Corrections Directive 317.15(4.4) authorizes
either an administrative revocation hearing or a "graduated
sanction" in the event of a condition violation.  Revocation
at the discretion of the DOC, without either a meeting to
discuss the appropriate sanction or an administrative due
process hearing, does not seem to be an option.

Nonetheless, the essential constitutional question is
whether Vermont's CR program is similar enough to parole to

entitle its participants to due process protection.  Young,
520 U.S. at 147.  The Young decision held that the Oklahoma
pre-parole program was "different from parole in name
alone," and was "equivalent to parole as understood in
Morrissey [v. Brewer, 408 U.S. 471 (1972)]."  520 U.S. at
145.  In contrast, the Vermont Supreme Court, having had the
full benefit of the parole characteristics described in
Morrissey, found that release under 28 V.S.A. § 808 "more
closely resembles that of an inmate seeking a particular
right or status within an institution, rather than that of a
parolee."  Conway, 161 Vt. at 737.  Accordingly, any Vermont
official aware of Conway could, even in light of Holcomb and
Young, reasonably believe that Ladd had no liberty interest
in his CR status.

Of course, as the Second Circuit noted in Holcomb, the
Vermont Supreme Court's ruling in Conway does not relieve
the federal courts of "our obligation to determine [the
plaintiff's] due process rights under the federal
constitution for ourselves."  337 F.3d at 222.  However, for
purposes of qualified immunity, the issue is whether a
reasonable Vermont official would have perceived Ladd's
liberty interest in his CR status as clearly established.

Given the status of the law in this area with respect to Vermont's furlough system, the Court should find that Ladd's liberty interest was not clearly established, and that the defendants are entitled to qualified immunity from his claims for damages.

I therefore recommend that Ladd's damages claims be DISMISSED.[7]  Those being the only remaining claims for relief in the complaint, the Court should GRANT the defendants' motion to dismiss.

VI.  Ladd's Motion For Summary Judgment

Ladd has moved for summary judgment on the merits of his due process claims.  Because I am recommending that those claims be dismissed pursuant to the defendants' motion to dismiss, the motion for summary judgment should be DENIED as moot.

Conclusion

For the reasons set forth above, I recommend that the defendants' motion to dismiss (Paper 28) be GRANTED, that Ladd's motion for summary judgment (Paper 27) be DENIED, and

---

[7]  Dismissal of Ladd's damages claims due to qualified immunity obviates the need to address the defendants' argument that he may not claim compensatory damages due to his failure to allege physical injury, as such damages are allegedly barred by the Prison Litigation Reform Act.

that this case be DISMISSED.[8]

Dated at Burlington, in the District of Vermont, this 3rd day of September, 2009.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objection which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.   Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* Local Rules 72.1, 72.3, 73.1, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).

---

[8]  The defendants' motion to dismiss was filed prior to Ladd's filing of his third amended complaint.  As Ladd explained in his motion to amend, the purpose of the third amended complaint was to "clarify and correct some grammatical errors in the sentence structure of the complaints [sic] paragraphs as submitted."  (Paper 26).  Consequently, the arguments in the defendants' motion to dismiss, as well as the responses to those arguments by the plaintiff, apply fully to the third amended complaint.  Although the defendants have not yet responded to the third amended complaint, the Court should not require such a response since to do so would undoubtedly result in a re-filing of the same motion to dismiss.